IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 06-0277-WS |
| | ) |
| NORMAN YOUNG, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion for sentence reduction and compassionate release or, in the alternative, for release to home confinement. (Doc. 266). The government has filed a response in opposition. (Doc. 271).[1] After careful consideration, the Court concludes the motion is due to be denied.

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ….

18 U.S.C. § 3582(c)(1)(A).

Relief under this provision, known as "compassionate release," thus contemplates satisfaction of four elements: (1) a proper motion; (2) a finding that extraordinary and compelling reasons for such relief exist; (3) a finding of consistency with Sentencing

---

[1] The government has also filed the defendant's recent medical records. (Docs. 273, 273-1). The government's motion for leave to file these documents under seal, (Doc. 272), is **granted**. The government's redundant re-filing of the defendant's medical records, (Doc. 275), is **stricken**.

Commission policy statements; and (4) favorable consideration of the Section 3553(a) factors. The government argues that none of these elements are satisfied.

Section 3582(c)(1)(A) permits a motion for compassionate release to be brought either by the Bureau of Prisons ("BOP") or by the defendant. In this case, as in most, the motion is brought by the defendant. The statute permits the defendant to file such a motion in either of two situations: (1) after exhausting all administrative remedies to appeal the BOP's failure to bring such a motion on his behalf; or (2) after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

The defendant relies on the latter of these options. The defendant has submitted three internal email requests for relief, and the government has discovered several more. They may be summarized as follows.

On November 19, 2021, the defendant emailed the warden, requesting compassionate release "due to the above listed factors," viz., "On 11/16/21 I was diagnosed at a [sic] with severe blockage in AT LEAST 3 ARTERIES in my heart, which is going to require triple bypass heart surgery and possibly a heart valve repair, and I am currently awaiting a surgery date." (Doc. 266 at 10).

On December 9, 2021, the defendant sent identical emails to the case management coordinator and the legal/executive assistant, stating that he meets the medical criteria for home confinement and seeking that relief to recover from surgery at home. The defendant also stated that "this new Covid is on the rise and if this Covid breaks out here my life will be at most risk." The defendant concluded, "Alos I'm asking to reconsider my compastante relase to and be consider [sic]." (Doc. 266 at 8-9).

On December 13, 2021, the defendant emailed D. Hudson, asking for compassionate release "due to the covid epidemic any my underlining [sic] conditions … I have been diagnosed with Asthma, Anxiety, depression, severe obstructive sleep apnea, hypertension, and obesity and I'm currently ordered to use a sleep monitor. (cpap)." (Doc. 274 at 1). The parties do not identify D. Hudson, but online sources indicate that Donald Hudson was warden at USP Leavenworth until September 2021. The email also indicates a blind copy went to LVN-InmateToWarden@bop.gov," which may or may not signify delivery to the warden.

On December 2021, the defendant forwarded his December 13 email to Lloyd Harvey. (Doc. 274 at 2). Harvey's position within the Bureau of Prisons is not identified.

Finally, on January 11, 2022, the defendant emailed the warden seeking "an immediate release to home confinement," on the grounds that, "at my post-surgery visit, the surgeon cautioned me that catching Covid would be very serious [and] I should do everything possible to protect myself." (Doc. 274 at 3). The defendant noted a then-current outbreak of Covid at the FCI and predicted that, since camp inmates work at the FCI, "it's just a matter of time until it's here." (*Id*.).

According to the government, only the November 19 and January 11 emails are relevant to the exhaustion requirement, because only they were directed to the warden. (Doc. 271 at 10-11). Because there are indications that the December 13 email was also directed to the warden, the Court assumes without deciding that it also is relevant to exhaustion. The government concedes exhaustion with respect to the risks to the defendant of Covid. (Doc. 271 at 10). Because the December 13 email may also be relevant, the Court assumes without deciding that the defendant has also exhausted his administrative remedies with respect to asthma, anxiety, depression, severe obstructive sleep apnea, hypertension, and obesity.

In his judicial motion, the defendant seeks compassionate release based on a number of conditions and concerns: (1) following his December 2021 open heart surgery, he "will be a long time recuperating," during which time his surgeon cautioned him "to do everything [he] could not to catch Covid for that could be disasterous [sic]"; (2) chronic kidney disease; (3) a swollen prostate; and (4) sleep apnea. (Doc. 266 at 5-6).

As the government notes, (Doc. 271 at 11), the defendant plainly has not satisfied the exhaustion requirement as to his chronic kidney disease and swollen prostate, because there is no evidence he ever raised these conditions with the warden. The Court agrees that the defendant's failure to present these conditions to the warden precludes him from relying on them on his pending motion, as cases within and outside the Eleventh Circuit have ruled. *E.g., United States v. Feldman*, 2020 WL 3799530 at *1 n.2 (M.D. Fla. 2020); *United States v. Gray*, 2020 WL 2132948 at *6 (S.D. Ala. 2020); *United States v. Mollica*, 2020 WL 1914956 at *6 (N.D. Ala. 2020); *United States v. Jeffries*, 2021 WL 2000555 at *5 & n.6 (W.D. Pa. 2021) (collecting cases).[2]

---

[2] The government can waive a failure to comply with the exhaustion requirement, *United States v. Harris*, 989 F.3d 908, 910-11 (11th Cir. 2021), but it has not done so in this case.

3

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission has done so. U.S.S.G. 1B1.13. The extraordinary and compelling reasons listed therein are the only ones that can support compassionate release, and district courts lack power to develop others. *United States v. Bryant*, 996 F.3d 1243, 1247-48 (11th Cir. 2021).[3]

The defendant's motion is based on his asserted medical conditions. The only "medical conditions of the defendant" that can support compassionate release are: (1) a "terminal illness"; and (2) "a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 application note 1(A). The defendant does not purport to have a terminal illness. Nor does he assert that any of his conditions, alone or in combination, interfere with his ability to care for himself in a prison environment, and the Court detects no such indication in his medical records.[4] On the contrary, in late January the defendant was "progressing well" post-surgery, and "[h]is incisions [we]re well healed." (Doc. 273-1 at 51). In mid-March, a medical doctor noted that the defendant's "[f]unctional capacity is excellent," including "[w]alking 3-5 miles most days …." (*Id*. at 44).

Because a medical condition's interference with the inmate's ability to care for himself in prison is a necessary ingredient under application note 1(A)(ii), the defendant's failure to assert such an interference is fatal to his assertion of an extraordinary and compelling reason for release, with or without a risk of contracting Covid.[5] *United States v. Giron*, 15 F.4th 1343, 1346 (11th Cir. 2021) (the "confluence of [a defendant's] medical conditions and COVID-19" does not

---

[3] The defendant's contrary assertion that "courts are no longer constrained by … the Commission['s] determination of when relief is appropriate," (Doc. 266 at 5), is legally incorrect.

[4] This is true as to all conditions mentioned by the defendant in his motion and/or in his various emails.

[5] The Court notes parenthetically that, according to the Bureau of Prisons website, USP Leavenworth currently has no Covid-positive inmates or staff. Also parenthetically, the defendant has received two doses of the Moderna vaccine, (Doc. 273 at 100), which "reduces his risk both of contracting [Covid] and of suffering severe symptoms if he contracts it." *United States v. Aldissi*, 2022 WL 16488 at *2 (11th Cir. 2022).

create an extraordinary and compelling reason for compassionate release when those conditions "were manageable in prison, despite the existence of the COVID-19 pandemic"); *United States v. Lawson*, 2022 WL 152512 at *2 (11th Cir. 2022) (when the defendant failed to show that his medical issues diminished his ability to provide self-care in prison, "any confluence between [his] alleged asthma or his other conditions and COVID-19 does not warrant a finding of extraordinary and compelling reasons"); *United States v. Aldissi*, 2022 WL 16488 at *2 (11th Cir. 2022) (regardless of any risk of developing severe symptoms of Covid, relief is limited to those with conditions that presently diminish their ability to provide self-care in prison); *United States v. Adamson*, 2021 WL 3160845 at *2 (11th Cir. 2021) (denial of compassionate release upheld when the defendant had not shown that his obesity diminished his ability to provide self-care in a prison environment during the Covid pandemic); *United States v. Jordan*, 2021 WL 5112257 at *3 (11th Cir. 2021) (same); *United States v. Colley*, 2021 WL 3667222 at *2 (11th Cir. 2021) ("The district court was also correct that Colley's medical conditions – obesity and hypertension – did not constitute an extraordinary and compelling reason because it did not meet the criteria in" advisory note 1(A)); *United States v. Oneal*, 2021 WL 5894858 at *2 (11th Cir. 2021) ("A district court does not abuse its discretion by denying compassionate release to an inmate with medical conditions that may increase the risk of death or severe medical complications from COVID-19 where the inmate's conditions do not fall within the policy statement's stated medical conditions.").

Because the defendant has failed to make any showing that legally recognized extraordinary and compelling reasons exist, the Court need not address either the Section 3553(e) factors or relevant policy statements. *United States v. Tinker*, 14 F.4th 1234, 1239 (11th Cir. 2021).

As noted, the defendant seeks in the alternative his placement in medical home confinement. (Doc. 266 at 1). Home confinement is governed by statute, specifically, 18 U.S.C. § 3624(c)(2).[6] Section 3624(c) commits to the Bureau of Prisons ("BOP") the decision where an inmate should spend the final months of his sentence. The CARES Act enlarges the amount of

---

[6] Home detention is also possible pursuant to 34 U.S.C. § 60541(g), but only for inmates that are terminally ill or at least 60 years old. The defendant is neither.

time a prisoner may spend in home confinement,[7] but it does not alter the provision making BOP the body to make such determinations.[8]  The defendant's recourse is thus to seek relief internally.

For the reasons set forth above, the defendant's motion for compassionate release or for release to home confinement is **denied**.

DONE and ORDERED this 3rd day of May, 2022.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE

---

[7] Section 3624(c)(2) limits home confinement to the final ten percent of a defendant's sentence, or to six months, whichever is less.  Section 12003(b) of the CARES Act provides that, upon an appropriate finding by the Attorney General, "the Director of the Bureau [of Prisons] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of 3624(c)(2) …, as the Director determines appropriate."  The Attorney General has made the required finding.

[8] *E.g., United States v. Saxon*, 2020 WL 2617131 at *1 (S.D. Ga. 2020); *United States v. Alvarez*, 2020 WL 2572519 at *2-3 (S.D. Fla. 2020); *United States v. Dison*, 2020 WL 2564677 at *5 (S.D. Ala. 2020); *United States v. Phillips*, 2020 WL 2219855 at *6 (M.D. Fla. 2020); *United States v. Daniels*, 2020 WL 1938973 at *1-2 (N.D. Ala. 2020).